IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| JACKS EGG FARM, INC., D/B/A JACK'S EGG FARM AND OTHER INGREDIENTS LLC, JACOB NEUSTADT, MORDECAI NEUSTADT, FAITH MCGINNIS, <br><br> Plaintiffs <br><br> -against- <br><br> GMTC FOOD SERVICES, LLC, DANNY JORDAN, ABC GLOBAL RESOURCES USA, LLC, ASAD KHAN, HAROON KHAN, SWEET NEW ENGLAND COMPANY, INC., D/B/A SUGAR DEPOT, INC.; SUGAR DEPOT, INC., ALBERT MCGREGOR, RAFAEL CARMELO, NEW ENGLAND FLOUR CORP., BEN-ZION ALCALAY; PDC INTERNATIONAL NJ LLC, 92 PALM FOOD, INC., MONICA GALLARDO, SERGIO TOVAR, RONNIES BAKERY SUPPLIES, LLC and JOHN DOES 1-100. <br><br> Defendants. | Index No.  23-CV-00965 <br><br><br> **VERIFIED COMPLAINT** <br><br> **DEMAND FOR JURY TRIAL** <br><br><br> **COMPLAINT UNDER RICO, for FRAUD, BREACH OF CONTRACT, CONVERSTION, UNJUST ENRICHMENT and RELATED CAUSES OF ACTION** |

**COME NOW** Plaintiffs, Jacks Egg Farm, Inc., D/B/A/ Jacks Egg Farm and Other

Ingredients, LLC, Jacob Neustadt, Mordecai Neustadt and Faith McGinnis  (collectively "the

Plaintiffs") in the referenced matter, by way of their attorney, Scott C. Levenson, Esq., of

Levenson Law Group, complaining of the Following Defendants: GMTC Food Services, LLC,

Danny Jordan, ABC Global Resources USA, LLC Asad Khan, Haroon Khan, Sweet New

England Company, Inc. d/b/a Sugar Depot, Ind., Rafael Carmelo, Albert McGregor, New

England Flour Corp., Ben-Zion Alcalay, GMTC Food Services, LLC, PD International NJ LLC,

92 Palm Food, LLC, Monica Gallardo, Sergio Tovar, Ronnies Bakery Supplies, LLC and John

Does 1-100, (collectively "the Defendants").

## **INTRODUCTION**

Plaintiffs bring this civil action against all Defendants under the federal Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1964 (hereinafter "RICO"), as well as for consumer fraud, conversion; breach of contract, breach of covenant of good faith and fair dealing, fraudulent inducement, negligent misrepresentation, unjust enrichment, and for attorneys fees.

Defendant Gallardo is the culpable person according to the RICO statute, with the requisite *mens rea,* who advanced a scheme and enterprise to defraud, and who did defraud the Plaintiffs of money and opportunities that rightfully belonged to them, causing them numerous injuries and damages as will be described herein.  The acts and omissions of Defendant Gallardo, as set forth herein which are violations of RICO include, but are not limited to, wire fraud, and embezzlement.  The acts and omissions of Defendant Gallardo, as described herein, were committed over a substantial period of time, were continuous and interrelated, and had an effect on interstate commerce.

The remaining Defendants collectively (sometimes "the RICO Defendants") assisted in the enterprise by: (1) working in partnership or otherwise in tandem with Defendant Gallardo in advancing her illegal RICO scheme; (2) sheltering and protecting Defendant Gallardo, and her assets, (2) employing Defendant Gallardo, (3) providing a shield for her to hide behind, (4) attempting to buy Plaintiffs' silence, and (5) otherwise by working together in furtherance of the common illegal interest of the enterprise Defendant Gallardo concocted.  All Defendants have thereby been unjustly enriched by the scheme described herein, and all are jointly and severally liable for the damages inflicted upon Plaintiffs directly by Defendant Gallardo

-

The acts and omissions by all Defendants, as described herein, have been, are and will be continually financially damaging for Plaintiffs.  In light of all of the foregoing, Plaintiffs respectively show to this Court and allege as follows:

## I. <u>PRELIMINARY STATEMENT</u>

1.      A RICO enterprise is "any individual, partnership, corporation, association or other legal entity, and any union or group of individuals associated in fact although not a legal entity." All Defendants, apart from Defendant Gallardo, assisted Defendant Gallardo in avoiding responsibility and liability for his acts and omissions as described herein.  These Defendants covered up the illegal Consumer Fraud Scheme of Defendant Gallardo, and the RICO predicate offenses committed by all Defendants include theft, embezzlement, fraud and obstruction of justice.

2.      For all of the foregoing, Plaintiffs seek a multitude of compensatory and punitive damages to be paid jointly and severally by all Defendants stemming from all the Defendants' acts and omissions as described herein.

## II. <u>THE PARTIES</u>

3.      Plaintiff JACKS EGG FARM, INC., D/B/A JACK'S EGG FARM AND OTHER INGREDIENTS LLC, (hereinafter "Plaintiff Jack's" or "Jack's") is a corporation organized under the laws of New York State.  It is a wholesaler of dairy and other food products, such as flour and sugar, with a principal place of business in Brooklyn, New York.

4.      Plaintiff JACOB NEUSTADT, (hereinafter "Jack Neustadt") is an individual residing in King's County, New York.  He is the CEO of Plaintiff Jack's.

5.      Plaintiff MORDECAI NEUSTADT, (hereinafter "Mordy") is an individual residing in Kings County New York.  He is a principal of Jack's, in charge of billing and invoicing, and had direct dealings with Defendant MONICA GALLARDO, the culpable RICO defendant..

6.      Plaintiff FAITH MCGINNIS (hereinafter "Faith") is an individual residing in Rockland County, New York. She is an employee of Plaintiff Jack's, who had direct dealings with Defendant MONICA GALLARDO, the culpable RICO defendant.

7.      Defendant GMTC Food Services, LLC (hereinafter "GMTC") is a Florida corporation with a principal place of business in Pompano Beach, Florida.  GMTC is a partner and co-conspirator with Defendant Gallardo.

8.      Defendant DANNY JORDAN (hereinafter "Jordan") is the Managing Member of GMTC.  He is a co-conspirator with Defendant Gallardo.

9.      Defendant ABC GLOBAL RESOURCES USA, LLC (hereinafter "ABC Global") is a New Jersey Limited Liability Company, and an international agribusiness processing and trading company with its principal place of business in Princeton, New Jersey.

10.      Defendant ASAD KHAN, is the President of ABC GLOBAL.  He was copied on emails sent from Defendant HAROON KHAN to Plaintiffs regarding the fraudulent activities of Defendants MONICA GALLARDO..

11.      Defendant HAROON KHAN is the Export & Logistics Manager of ABC GLOBAL. He is a co-conspirator with Defendant MONICA GALLARDO.

12.      Defendant SWEET NEW ENGLAND COMPANY, INC, D/B/A SUGAR DEPOT, INC. (hereinafter "Sugar Depot") is a New Jersey Corporation, and sugar packaging and manufacturing company with its principal place of business in Westampton, New Jersey. Upon information and belief, Sweet New England also operates under the name Sugar Depot, Inc. which

-

is a wholesale bakery with a warehouse location in Rahway, New Jersey.  Sugar Depot and its principals, set forth below, were, at relevant times, partners of Gallardo in furtherance of her illegal RICO schemes, as described herein.

13.     Defendant SUGAR DEPOT, INC. is a New Jersey Corporation, and wholesale bakery with its principal place of business in Westampton, New Jersey, and a warehouse location in Rahway, New Jersey.  As set forth herein, Sugar Depot is operated and/or controlled by and/or a/k/a Defendant SWEET NEW ENGLAND COMPANY, INC. Because their acts and omissions are so closely related as to appear to belong to both entities, sometimes, Defendants Sweet New England and Sugar Depot will be referred to as one entity.

14.     Defendant RAFAEL CARMELO is the Vice-President of Sweet New England/Sugar Depot.  He is a co-conspirator with Defendant MONICA GALLARDO.

15.     Defendant ALBERT MCGREGOR (hereinafter "McGregor") is the CEO of Defendant SWEET NEW ENGLAND/SUGAR DEPOT. He controls Defendant Sweet New England which, upon information and belief is otherwise known as or also does business as Sugar Depot.  McGregor  is a co-conspirator with Defendant MONICA GALLARDO.

16.     Defendant NEW ENGLAND FLOUR CORP., (hereinafter "New England Flour") is a Florida Corporation with its principal place of business in Boca Raton, Florida. New England Flour is a co-conspirator with Defendant Gallardo.

17.     Defendant BEN-ZION ALCALAY, (hereinafter "Alcalay") is an individual who is the director and/or CEO of Defendant New England Flour. He is a co-conspirator with Defendant MONICA GALLARDO.

18.     Defendant PDC INTERNATIONAL NJ LLC (hereinafter "PDC") is a New Jersey Limited Liability Company.  It is an importer of sugar with a principal place of business in New Brunswick, New Jersey.

19.     Defendant MONICA GALLARDO (hereinafter "Gallardo") is a manager and controlling person of PDC.

20.     Defendant SERGIO TOVAR (hereinafter "Tovar") is a manager and controlling person of PDC.  He is a co-conspirator with Defendant MONICA GALLARDO in her schemes to defraud Plaintiffs.

21.     Defendant 92 PALM FOODS INC. (hereinafter "92 Palm") is an entity related to PDC managed by Gallardo and Tovar with a principal place of business in Huntington, New York.

22.     Defendant RONNIES BAKERY SUPPLIES, LLC, (hereinafter "Ronnies") is a Limited Liability Company with a principal place of business in Belleville, New Jersey. Upon information and belief, it is a co-conspirator with Defendant MONICA GALLARDO.

23.     Defendant Gallardo concocted a scheme to defraud Plaintiffs of more than $800,000 which they paid in exchange for sugar which they had contracted with Gallardo to deliver to them.  She fraudulently induced them to contract with her in order to take their money and give them no sugar in return.  This fraudulent scheme falls under and is a violation of RICO, with Gallardo as the culpable person under the State.

24.     The remaining RICO Defendants all conspired with and aided and abetted Defendant Gallardo in furtherance of her fraudulent schemes, and, in so doing, also proximately caused all of the Plaintiffs' injuries and damages.  This aiding and abetting by the remaining RICO Defendants included the following elements: (1) knowing about the underlying Fraudulent Scheme

devised by Defendant Gallardo; and (2) rendering substantial assistance in the achievement and perpetuation of the Fraud committed by Defendant Gallardo.

### III. JURISDICTION AND VENUE

25.     The Court possesses jurisdiction under 28 U.S.C.§ 1331.  Plaintiffs' claims present a federal question under 18 U.S.C. §1965(a).

26.     Venue is proper in the Eastern District of New York.  The Plaintiffs are located and residing in Brooklyn, New York.  A substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in Brooklyn, New York.  28 U.S.C. § 1391(a)(2).  Defendants transacted many of their affairs with the Plaintiffs in Brooklyn, New York. 18 U.S.C. § 1965(a).  Brooklyn, New York is located within the Eastern District of New York State.

### IV. STATEMENT OF FACTS

27.     Plaintiffs have known Defendant Gallardo for over 10 years.  They used to buy truckloads of sugar from her all of those years and during that time, they paid her company 92 Palm or PDC cash on delivery.  Plaintiffs did not transact continuously with Gallardo during those years, but just ordered shipments every now and then.

28.     In or around the end of 2019, Gallardo approached Plaintiffs and informed them that she could provide sugar imported from Columbia at a discounted price, which, at that time, amounted to an approximately 6% discount.

29.     Gallardo informed Plaintiffs that she would deliver a weekly product of approximately $144,000 worth of sugar, on the condition that Plaintiff Jacks Eggs would pay her $144,000 per week, prepaid four weeks in advance.

30.     Plaintiff Jacks Eggs agreed to this, paid Gallardo and on the fifth week did receive the first delivery.

31.     Loads were picked up at two different locations, one - the address for Defendant Sugar Depot, at 901 Penn St, Rahway, New Jersey 07065, and the other, the address for Defendant Ronnies Bakery, located at 15 Willet St, Belleville, New Jersey 07109.

32.     Plaintiffs wrote checks for the shipments made out to 92 Palm or PDC.

33.     After several weeks of making deliveries, Gallardo started missing deliveries by making the excuse that the shipments were delayed on the vessel.  Plaintiff Jack's Eggs told Gallardo that they cannot do this any longer.

34.     Defendant Gallardo then offered to sell through a broker, with Jack's Eggs paying at a slightly higher price.  The broker she offered was Defendant New England Flour.

35.     In or around May of 2022, Defendant Gallardo again approached Jack's Eggs wanting to deal directly with Plaintiffs, and stated that she only wanted to be paid one week in advance.  Plaintiffs agreed.

36.     As time went on, Defendant Gallardo started asking for more funds in advance for different reasons, such as she had to get the full allowed quota out of Columbia by the year's end, and so on and so forth.

37.     Gallardo asked Plaintiffs to make checks payable to one of the following of her vendors, all of whom are Defendants in this lawsuit: ABC Global, GMTC Food Service, 92 Palm, PDC or Sugar Depot.

38.     Plaintiffs made payments as requested by Gallardo.

39.     On January 5, 2023, and later on January 10, 2023 Defendant Sweet New England (aka Sugar Depot) emailed Plaintiffs informing them of past due invoices, attaching copies of

-

A/R for Jacks, totaling $123,830, and asking if Plaintiffs could advise as to payment status. Plaintiffs did not understand what this referenced as they knew they had paid for the invoices. Plaintiffs later realized that Gallardo had fabricated these invoices and had connived Plaintiff Faith into letting Gallardo use her computer, from which she sent the fabricated invoices.  Copies of this email thread are attached hereto as **Exhibit A.**

40.     On January 9, 2023,  Plaintiff Mordy received a text message from Defendant Sweet New England/Sugar Depot, or its principal, stating that Plaintiffs needed to pay the 180 days past due invoices to Defendant Sugar Depot.  This text message also notified Plaintiffs that Defendant Gallardo was no longer working with Defendant Sugar Depot.

41.     On January 9, 2023, Plaintiff Mordy met with Defendant McGregor, the owner of Defendant Sweet New England to discuss this matter in person.

42.     Plaintiffs and Defendant McGregor had, in all relevant times a clear understanding -- McGregor had recommended Gallardo to Plaintiffs for their dealing with her directly, and both knew that Gallardo was the one in charge and calling all the shots.  Plaintiffs also knew that Defendant Sweet New England was a partner with Monica in Defendant Sugar Depot at the Rahway NJ facility.

43.     When they met, Defendant McGregor told Plaintiff Mordy: "In the past you were dealing with Monica [Gallardo]."   Plaintiff Mordy informed McGregor that Gallardo owes money to Jacks for all the prepayments they gave her.

44.     In addition to this, Jacks was storing a total of 510 pallets of flour at both facilities mentioned herein, in Rahway (Defendant Sweet New England/Sugar Depot) and Belleville (Defendant Ronnies)

-

45.     At the present time, 172 pallets of flour, with a wholesale value of $200,000 remains at the Rahway, New Jersey facility, owned by Sugar Depot. These two facilities were offered to Jacks as a favor for Jacks being a valuable customer to them.

46.     After Gallardo had begun her RICO scheme to steal from Plaintiffs - a scheme in which all remaining Defendants actively participated, Sugar Depot suddenly refused to allow Plaintiffs to pick up the 172 pallets of flour.

47.     The pallets were bought and paid for by Jacks and were only stored there with Defendant Gallardo's permission, as a Partner of Defendant Sugar Depot.  Gallardo had been Plaintiffs' only contact with Sugar Depot.

48.     Defendant McGregor, Principal of Defendant Sweet New England/Sugar Depot claimed in a text message to Plaintiffs, a copy of which is attached hereto as **Exhibit B,** that he would not permit Plaintiffs to access the 172 pallets of flour because the pallets are the subject of a police investigation.

49.     No police investigator has ever contacted any of the Plaintiffs regarding any investigation about the pallets.

50.     A few days later, in a text message to Plaintiffs, dated January 14, 2023, Defendant McGregor wrote following oddly worded and subtly threatening text message, a copy of which is attached hereto as **Exhibit C**:

> Hello Mordy, this world is very small and the sugar industry is even smaller.  Since our last conversation, I have received a significant amount of information on multiple transactions.  I suggest that the invoices of Sugar Depot [his company, and Gallardo's partner] be paid by Jacks on Tuesday at the latest.  That is my last friendly advice regarding the current situation.  It would seem that we are not all victims of Monica [Gallardo].  Have a good weekend.

51.     On January 9, 2023, an individual from Defendant GMTC Food Service (Defendant John Doe 1) contacted Jacks saying that he wanted to meet.  Although GMTC is a

-

Florida company, Defendant John Doe happened to be in the neighborhood of Brooklyn that very day.  He visited Plaintiffs and told them that Gallardo owed them over $2 million, and also told them that Gallardo had informed him that Jacks is responsible for the money she owes GMTC.

52.     On January 17, 2023, Defendant McGregor responded by email to Plaintiff Mordy's emailed request for release of the flour pallets, to which Mordy had attached Freight Pod, and other evidence of ownership.  Defendant McGregor had emailed Mordy asking him a number of questions about the pallets.  Mordy responded answering all of the questions and informing him that Plaintiffs had been scammed out of $800,000 by Gallardo.  Mordy also informed McGregor that any and all invoices for delivery of sugar to Defendant Sweet New England were fabricated and fraudulently created by Gallardo.

53.     Around this same time, a principal of Defendant ABC Global, upon information and belief Defendant Haroon Khan reached out to Plaintiffs by telephone and told them that they owe it money as well.  Plaintiff Mordy visited a representative from ABC Global the next day and explained that Gallardo had scammed Jacks as well.

54.     On January 20, 2023, Plaintiffs received an email, a copy of which is attached hereto as **Exhibit D,** from Defendant Haroon Khan at Defendant ABC Global demanding payment.  Defendant Haroon Khan recommended that Plaintiffs discuss the matter with Defendant Asad Khan if they had any questions.

55.     Jacks had sent Defendant ABC Global $270,000 worth of funds in checks dating back to December 21, 2022 -- all in advance -- and all for products Jacks never received.

56.     On January 17th, 2023, Defendant Sweet New England emailed Plaintiff Morty asking questions about the flour and the sugar shipments.  Morty answered all of them and a copy of these emails is attached hereto as **Exhibit E**.

57.     Prior to all of the aforementioned calls, emails and texts which completely puzzled Plaintiffs,  Plaintiff Faith McGinnis was directly deceived by Gallardo.  One day Gallardo asked Faith if she could use her computer to send an email, making the excuse that her computer was not working.  Faith allowed Gallardo to do this, not knowing anything about Gallardo's treacherous and deceptive intentions.  From Faith's computer at Plaintiff Jack's, Gallardo sent fraudulent emails to individuals involved in her scam, from Plaintiff's email address.

58.     Plaintiffs and their attorneys are in possession of a video showing Gallardo scamming Faith in this manner.

59.     The RICO defendants acted in concert and as partners in crime with Gallardo.  In particular Plaintiffs had every reason to believe, when the sent her the advanced payments for the sugar, that she still worked for Defendants Sweet New England/Sugar Depot and was still partnered with or working for Defendant McGregor.

60.     Upon information and belief Gallardo paid off all of her accomplices, including the Defendants named herein, her drivers, and the John Does named in this Complaint, in furtherance of her unlawful scheme to defraud Plaintiffs.

61.     Plaintiffs have learned that Defendant Gallardo and the remaining Defendants - her Partners in crime, have determined that it is more profitable to re-sell the sugar rather than deliver it to Plaintiffs, and also to try to make the Plaintiffs their scapegoats for their financial and consumer fraud schemes.

62.     Defendants have all defrauded Plaintiffs of product for which they alone paid. Defendants have all been unjustly enriched by the illegal consumer fraud schemes of Gallardo.

63.     Plaintiffs have lost over $800,000 by paying in advance to Gallardo for the sugar they never received.

64.     And they have lost well over $200,000 in perishable flour because Defendants Sweet New England/Sugar Depot and McGregor have converted it for their own use.

65.     As a direct and proximate result of all of the foregoing, Plaintiffs have been damaged and will be damaged in an amount in excess of $1 million.

## IV. CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF

**(Violations of Federal Civil RICO—Conduct of a RICO Enterprise
18 U.S.C. § 1962(c) by all Defendants)**

66.     Plaintiffs incorporate by reference all of the preceding paragraphs of this Complaint as if fully set forth herein.

67.     At all relevant times, each RICO Defendant was a "person" within the meaning of 18 U.S.C. §§ 1961(3) and 1962(c). The RICO Defendants violated 18 U.S.C. § 1962(c) by the acts described in the paragraphs below.

68.     At all relevant times, the illegal consumer fraud scheme conceived and carried out by Defendant Gallardo, by which she defrauded Plaintiffs, constituted an "Enterprise" within the meaning of 18 U.S.C. §§ 1961(4) and 1962(c). At all relevant times, the RICO Defendants were engaged in, and/or their activities affected, interstate commerce and/or foreign commerce within the meaning of 18 U.S.C. § 1962(c).  At all relevant times, the remaining RICO Defendants held a position in or were otherwise affiliated with the Business described herein.

69.     At all relevant times the RICO Defendants did knowingly, willfully, and unlawfully conduct or participate, directly or indirectly, in the conduct, management, or operation of the affairs of the Business for which Plaintiffs have yet to be compensated.

70.     At all relevant times the RICO Defendants participated in the scheme or artifice knowingly, willfully, and with the specific intent to advance their scheme to deceive or defraud Plaintiffs.

71.     The RICO Defendants have engaged in multiple predicate acts, including theft, embezzlement, fraud and obstruction of justice.  The conduct of the RICO Defendant as described herein constitutes a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5), as they are both continuous and related.  *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989).

72.     The RICO Defendants' violations of federal law as set forth herein, each of which directly and proximately injured Plaintiffs, constitutes a continuous course of conduct, which was intended to defraud Plaintiffs of money and property through false representations, fraud, deceit, and other improper and unlawful means.   Therefore, said violations were a part of racketeering activity as defined by 18 U.S.C. §§ 1961(1) and (5).

73.     Plaintiffs were injured in their money and property by reason of the RICO Defendants' violation of 18 U.S.C. § 1962(c).  The RICO Defendants' injuries to Plaintiffs were a direct, proximate, and reasonably foreseeable result of their violation of 18 U.S.C. § 1962. *Daskal v. Tyrnauer,* 961 N.Y.S 2d 357 [Sup Ct, Kings County 2012, *aff'd,* 123 AD3d 652, 998 NYS2d 412 [2d Dept 2014].

74.     Plaintiffs were injured by the RICO Defendants' (1) conduct; (2) of an enterprise (3) through a pattern (4) of racketeering activity. *Invacare Supply Group, Inc. v. Star Promotions, Inc.,* 27 Misc 3d 1202 [A] [Sup Ct, Kings County 2010]; 18 USCA § 1962.

75.     Plaintiffs are the ultimate victims of the RICO Defendant's unlawful enterprises. Plaintiffs have been and will continue to be injured in their money and property in an amount to be determined at trial.

76.     As a direct and proximate result of the foregoing, Plaintiffs have been damaged and will be damaged in an amount exceeding $1 million.

77.     Pursuant to 18 U.S.C. § 1962(c), Plaintiffs are entitled to recover treble damages plus costs and attorneys' fees from RICO Defendants as well as any other relief authorized by statute.

## SECOND CLAIM FOR RELIEF
### (Fraud by Defendant Gallardo)

78.     Plaintiffs incorporate by reference all of the preceding paragraphs of this Complaint as if fully set forth herein.

79.     Under New York Law, to establish fraud a Plaintiff must prove five elements by clear and convincing evidence:  (1) a material misrepresentation or omission of fact; (2) made by defendant with knowledge of its falsity; (3) an intent to defraud; (4) reasonable reliance on the part of the Plaintiff; and (5) resulting damage to the Plaintiff.  *See Crigger v. Fahenstock & Co., Inc.* 443 F.3d 230, 234 (2d Cir. 2006).

80.     Defendant Gallardo defrauded Plaintiff out of over $800,000 worth of product which Plaintiffs never received.  She took funds that were paid in advance by Plaintiffs for sugar, and use them as she saw fit and for her own purposes, never telling anything about this to

-

Plaintiffs.  Plaintiffs reasonably relied upon Defendant Gallardo's promises and the terms of the Agreement and understanding which they had maintained with Gallardo for a number of years.

81.     Defendant Gallardo's acts and omissions, as described herein, constitute common law fraud and he is liable for the damages his fraudulent conduct has cost the Plaintiffs.

82.     Plaintiffs have established through allegations and documentary evidence already presented in this Complaint, the five elements enumerated above.

83.     As a direct and proximate result of the foregoing, Plaintiffs have been damaged and will be damaged in an amount exceeding $1 million.

### THIRD CLAIM FOR RELIEF
**(Breach of Contract by Defendant Gallardo)**

84.     Plaintiffs incorporate by reference all of the preceding paragraphs of this Complaint as if fully set forth herein.

85.     Defendant Gallardo has breached her contract(s) with Plaintiffs by failing to deliver the sugar that Plaintiffs paid for.

86.     Plaintiffs dutifully fulfilled all obligations designated to them under the Agreement.

87.     Gallardo failed to perform her duties and obligations under the Agreement, and has instead stolen, converted, spent or otherwise fraudulently kept the funds Plaintiffs paid her for the sugar for her own purposes.

88.     As a direct and proximate result of Defendant Gallardo's breach of the Agreement, Plaintiffs have been damaged and will be damaged in an amount to be proven at trial, but reasonably believed to exceed $1 million.

### FOURTH CLAIM FOR RELIEF

-

**(Breach of Covenant of Good Faith and Fair Dealing by Gallardo, PDC, 92 Palm, GMTC, ABC Global, Sweet New England/Sugar Depot and McGregor)**

89.     Plaintiffs incorporate by reference all of the preceding paragraphs of this Complaint as if fully set forth herein.

90.     Every contract in New York contains an implicit covenant of good faith and fair dealing that prohibits a party to the contract from acting maliciously to destroy the benefits of the contract to the other party.

91.     Defendants Gallardo, PDC, 92 Palm, GMTC, ABC Global, McGregor and Sweet New England/Sugar Depot have breached the covenant of good faith and fair dealing they owe to Plaintiffs by purposely failing to provide the product Plaintiffs paid for, including sugar and flour, in order to increase the return on investment to them.

92.     As a direct and proximate result of the foregoing breaches by these Defendants, Plaintiffs have been damaged and will be damaged in an amount that exceeds $1 million.

## FIFTH CLAIM FOR RELIEF
**(Unfair and Deceptive Trade Practices; NY CPLR §20-700;
NY Gen Business Law §349 against Defendants Gallardo and McGregor)**

93.     Plaintiffs incorporate by reference all of the preceding paragraphs of this Complaint as if fully set forth herein.

94.     Under CPLR § 20-700, a deceptive trade practice includes "[a]ny falsely disparaging, or misleading oral or written statement . . . or other representation of any kind made in connection with the sale . . . or . . . the offering for sale . . . of consumer goods or services."

95.     The acts and omissions of Defendants Gallardo and McGregor, as described herein, violate § 20-700 and the prohibitions against this very conduct.

96.     To succeed on a Section 349 claim, a plaintiff must allege that the defendant's conduct (i) was consumer-oriented; (ii) was materially deceptive; and (iii) resulted in an injury

-

to the plaintiff. *Himmelstein, McConnell, Gribben, Donoghue & Joseph, LLP, et al. v. Matthew Bender & Co.* (2021 NY Slip Op 03485 Decided on June 3, 2021)

97.     The acts and omissions of Defendants Gallardo and McGregor, as described herein, violate § 349 of New York General Business Law.

98.     As a direct and proximate result of the foregoing acts and omissions by Defendants Gallardo and McGregor, Plaintiffs have been damaged and will be damaged in an amount that exceeds $1 million.

## SIX CLAIM FOR RELIEF
### (Fraudulent Inducement by Defendants Sweet New England/ Sugar Depot, Gallardo and McGregor)

99.     Plaintiffs fully incorporate by reference all of the preceding paragraphs of this Complaint as if fully set forth herein.

100.     McGregor represented to Plaintiffs that Gallardo still worked for him and is therefore responsible for her schemes that injured the Plaintiffs.

101.     In reliance upon Gallardo's false promises, lies, and fraudulent documentation, Plaintiffs paid Gallardo for the sugar.  In reliance upon McGregor's representations that Gallardo worked for him Plaintiffs sent Gallardo the advanced funds for the sugar shipments. s

102.     Gallardo used the funds provided by Plaintiffs to enrich herself to Plaintiffs' detriment.

103.     Gallardo misrepresented a material fact to Plaintiffs regarding what she was doing with the payments for the sugar shipments -- knowing the same to be false.  She made the misrepresentations with the intention of inducing the Plaintiffs to rely upon it; Plaintiffs reasonably did rely upon it and this reliance caused injury to the Plaintiffs.

104.    Defendants Sweet New England/Sugar Depot, by and through their principal, Defendant McGregor, all misrepresented that Gallardo no longer worked with or for them/him, as Plaintiffs had been induced to believe.

105.    Plaintiffs relied on all of the foregoing false statements/representations, which were material to Plaintiffs' decision to pay Gallardo in advance.

106.    As a direct and proximate result of the materially false statements made to Plaintiffs by Defendants Gallardo, McGregor, Sweet New England/Sugar Depot, on which Plaintiffs reasonably relied to their detriment, Plaintiffs have been damaged in an amount to be determined at trial, but reasonably believed to be in excess of $1 million plus interest, costs and attorneys fees.

107.    Plaintiffs are also entitled to an award of treble damages from Defendants Gallardo, McGregor, Sweet New England/Sugar Depot, due to the wilful and wanton nature of the fraudulent inducement.

## SEVENTH CAUSE OF ACTION
**(Piercing the Corporate Veil/Personal Liability against all Defendants)**

108.    Plaintiffs fully incorporate by reference the preceding paragraphs of this Complaint as if fully set forth herein.

109.    As set forth herein, Gallardo accepted Plaintiffs' payments for sugar loads on false pretenses and knowingly and purposely misappropriated the payments for her own personal gain.

110.    Also as set forth herein, the remaining Defendants were part of this fraudulent RICO scheme of Gallardo. The remaining individual Defendants intentionally aided and abetted Gallardo in this fraudulent RICO scheme that injured and damaged Plaintiffs.

111.    This is fraud sufficient to pierce the corporate veil of the following Corporate Defendants in order to reach and render their principals personally liable for the damages to Plaintiffs: GMTC to reach its principal Jordan; ABC GLOBAL to reach its principals Asad Khan

-

and Haroon Khan, Sweet New England Company, Inc/Sugar Depot to reach its former and current principals Rafael Carmelo and Albert McGregor, respectively; New England Flour, to reach its principal Ben-Zion Alcalay; and PDC and 92 Palm in order to reach its principals Monica Gallardo and Sergio Tovar.

112.    As a direct and proximate result of the acts of the Defendants, as described herein, Plaintiffs have been damaged and will be damaged in an amount in excess of $1 million.

<u>**EIGHTH CLAIM FOR RELIEF**</u>
**(Aiding and Abetting Fraud by Remaining Defendants)**

113.    Plaintiffs fully incorporate by reference the preceding paragraphs of this Complaint as if fully set forth herein.

114.    Under New York Law, to establish aiding and abetting fraud, a plaintiff must prove: (1) the existence of a primary violation; (2) actual knowledge of the violation by the aider and abettor; and (3) substantial assistance. *Kirschner v. Bennett,* 648 F. Supp. 2d 525, 533 (S.D.N.Y. 2009) .

115.    As discussed above, Plaintiffs have established fraud against Defendant Gallardo. Plaintiffs have also established, through documentary evidence attached to this Complaint as Exhibits, that each of the remaining Defendants played a role and is still playing a role in assisting her with that Fraud.

116.    Plaintiffs have therefore established that the remaining Defendants all aided and abetted, and are still aiding and abetting Defendant Gallardo with the fraud which she conceived of, and which she pre-meditatedly and deliberately perpetrated against the Plaintiffs. They are all liable, jointly and severally.

117.    As a direct and proximate result of the aiding and abetting of fraud by the remaining Defendants, Plaintiff have been damaged and will be damaged in an amount exceeding $1 million.

**NINTH CLAIM FOR RELIEF**
**(Unjust Enrichment by All Defendants)**

118.    Plaintiffs fully incorporate by reference the preceding paragraphs of this Complaint as if fully set forth herein.

119.    Cases dealing with unjust enrichment in New York are uniform in their recognition of three elements of the claim: (1) that the defendant benefited; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution. *Beth Israel Med. Ct., v. Horizon Blue Cross & Blue Shield of N.J., Inc.,* 448 F.3d 573, 586 (2d Cir. 2006) .

120.    In reliance upon Gallardo's false promises, her fraudulent invoices and with the support of the remaining Defendants, Plaintiffs sent funds totaling more than $800,000 as advanced payments for sugar shipments Gallardo was supposed to provide.  Defendant Gallardo kept for herself, misused and wrongfully converted and transferred these funds for her own use.

121.    The remaining Defendants aided and abetted Gallardo in this fraud, in the manner described herein.   Because of this all Defendants have been unjustly enriched at Plaintiffs' expense.

122.    As aiders and abetters to Defendant Gallardo's fraud, all Defendants have been materially enriched by payments made by the Plaintiffs, which were illegally diverted to Defendant Gallardo, as set forth herein, and for which Plaintiffs have not received either the sugar they paid for, or reimbursement. Therefore all Defendants have been materially enriched at the Plaintiffs' expense.

123.    It is against equity and good conscience to permit the Defendants to retain what is sought to be recovered.

124.    As a direct and proximate result of the acts and omissions of all of the Defendants, Plaintiffs have been damaged and will be damaged in an amount to be proved at trial, but reasonably believed to be in excess of $1 million.

**TENTH CAUSE OF ACTION**
**(Conversion by Defendants Gallardo, McGregor, ABC Global,**
**GMTC Food Service, 92 Palm, PDC, and Sweet New England/Sugar Depot)**

**125.**    Plaintiffs fully incorporate by reference the preceding paragraphs of this Complaint as if fully set forth herein.

126.    New York law defines conversion as "the unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights." *Thyroff v. Nationwide Mut. Ins. Co.,* 460 F 3d. 400, 403-04 (2d Cir. 2006).

127.    Plaintiffs prove conversion by establishing four elements: (1) the property subject to conversion is a specific identifiable thing; (2) plaintiff had ownership, possession or control over the property before its conversion; and (3) defendant exercised an unauthorized dominion over the property, to the alteration of its condition or to the exclusion of the plaintiff's rights. *Moses v. Martin,* 360 F. Supp. 2d 533, 541 (S.D.N.Y. 2004).

128.    Plaintiffs paid Gallardo, through her vendor Defendants, as named herein, more than $800,000 for sugar which they never received.  These funds paid are a specific, identifiable thing.  Plaintiffs had ownership, possession and control over the property before Defendant Gallardo converted it.  Defendant Gallardo exercised an unauthorized dominion over the property to the alteration of its condition or to the exclusion of plaintiff's rights.

129.    Plaintiffs have clearly established that Defendants acted without authorization in taking funds belonging to the Partnership; that he exercised a right of ownership over the

-

property of the partnership and that he converted it and altered it to the exclusion of Plaintiffs' rights.

130.    In addition to this, Plaintiffs have been storing highly perishable flour, and are still storing over 172 pallets of perishable flour, having a wholesale value of $200,000, at the Sugar Depot warehouse, at the direction of, and with the permission of Defendants Gallardo and McGregor, and by extension to all of her Defendant partners, as named herein.

131.    Defendant McGregor, the principal of Sweet New England/Sugar Depot, will not permit Plaintiffs to access or otherwise retrieve the 172 pallets of flour that are being stored at Sugar Depot's 901 Penn St, Rahway, New Jersey address.

132.    These defendants have therefore converted Plaintiffs' property - a specific, identifiable thing - 172 pallets of flour - for their own purposes, without authorization, and they have taken possession of the flour to the exclusion of Plaintiffs' rights to is.

**133.**    As a direct and proximate result of the foregoing conversion of the funds for the sugar, and the flour pallets, by the Defendants named herein, Plaintiffs have been damaged and will be damaged in an amount exceeding $1 million.


**ELEVENTH CLAIM FOR RELIEF**
**(Intentional Infliction of Emotional Distress by All Defendants)**

134.    Plaintiffs fully incorporate by reference the preceding paragraphs of this Complaint as if fully set forth herein.

135.    Under New York law, a party who has been subjected to "conduct . . . so outrageous in character, and so extreme in damages, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community" is entitled to prove a

claim for intentional infliction of emotional distress." *Murphy v. Am. Home Products Corp.,* 58 N.Y.2d 293, 303, 461 N.Y.S.2d 232, 236 (1983).

136.    To recover damages for intentional infliction of emotional distress, a plaintiff must establish four distinct elements, including (1) extreme and outrageous conduct; (2) intent to cause, or disregard of a substantial probability of causing severe emotional distress; (3) severe emotional distress; and (4) a causal connection between the conduct and a cognizable injury. *Howell v. New York Post Co., Inc.,* 81  N.Y.2d 115, 121, 596 N.Y.S.2d 350, 353 (1993).

137.    Defendant Gallardo's actions were extreme and outrageous and either designed to, or in complete and utter disregard of the probability of causing severe emotional distress in Plaintiffs.  The remaining RICO defendants have aided and abetted Gallardo and in so doing have also caused Plaintiffs to suffer severe emotional stress and distress.

138.    Plaintiffs are entitled to damages resulting from the acts and omissions of Defendant Gallardo, as well as all other Defendants who have aided and abetted her fraudulent schemes that injured the Plaintiffs.

139.    An award of punitive damages is intended to advance the important state interests of deterrence and retribution.  *State Farm Mut. Auto Ins. Co. v. Campbell,* 538 U.S. 408, 416, 123 S. Ct. 1513, 1519 (2003). The factors to be considered when awarding punitive damages include: (1) the degree of reprehensibility of the tortious conduct; (2) the ratio of punitive damages to compensatory damages; and (3) the difference between this remedy and the civil penalties authorized or imposed in comparable cases.  *Lee v. Edwards,* 101 F.3d 805, 809 (2d Cir. 1996).

140.    Punitive damages, or exemplary damages, are damages assessed to punish the Defendants for outrageous conduct similar to that which formed the basis of the lawsuit.

141.    Plaintiffs are entitled to actual and punitive damages based on the outrageous, intentional, willful and wanton acts of all of the Defendants, as described in this Complaint.

### TWELFTH CAUSE OF ACTION
**(Payment of Attorneys Fees By All Defendants)**

142.    Plaintiffs fully incorporate by reference the preceding paragraphs of this Complaint as if fully set forth herein.

143.    The acts and omissions by all of the Defendants as set forth herein were willful and wanton and they harmed Plaintiffs.

144.    As a result of all Defendants' acts and omissions, as described herein, Plaintiffs were forced to initiate this proceeding.

145.    Plaintiffs therefore have a right to attorneys' fees and costs for having to initiate and litigate this action.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court Order the following relief:

1.    As to the First Cause of Action, award Plaintiffs money damages pursuant to 18 U.S.C. § 1962(c), as well as treble damages plus costs and attorneys' fees, and any other relief provided by the statute for the violations of the RICO statutes by all defendants;

2.    Enter judgment against the RICO Defendant in an amount equal to three times the amount of damages to the Plaintiffs have sustained because of the RICO Defendant's actions, plus a civil penalty for each violation of 18 U.S.C. § 1964;

3.    Order the RICO Defendant to cease and desist from violating 18 U.S.C. § 1964;

4.    As to the Second Cause of Action, award Plaintiffs money damages caused by the fraud committed by Defendant Gallardo;

-

5.      As to the Third Cause of Action, award Plaintiffs money damages for the breach of contract by Defendant Gallardo;

6.      As to the Fourth Cause of Action, award Plaintiffs money damages for the breach of the covenant of good faith and fair dealing committed by Defendant Gallardo;

7.      As to the Fifth Cause of Action, award Plaintiffs money damages for the unfair and deceptive trade practices and violations of New York Business law by Defendant Gallardo;

8.      As to the Sixth Cause of Action, award Plaintiffs money damages, plus treble damages for all of the Defendants acts and omissions that constitute fraudulent inducement;

9.      As to the Seventh Cause of Action, allow Plaintiffs to pierce the corporate veil of each corporate Defendant, in order to reach and render personally liable each individual principal, as set forth in the Seventh Cause of Action.

10.      As to the Eighth Cause of Action, award both Plaintiffs money damages for the aiding and abetting of fraud committed by all of the remaining Defendants, apart from Defendant Gallardo;

11.      As to the Ninth Cause of Action, award Plaintiffs money damages for the unjust enrichment, to be paid jointly and severally by all defendants

12.      As to the Tenth Cause of Action, award Plaintiffs money damages money damages for the conversion of assets by Defendant Gallardo and the conversion of flour by Defendants McGregor, Sweet New England/Sugar Depot;

13.      As to the Eleventh Cause of Action, award Plaintiffs money damages for the intentional infliction of emotional distress proximately caused to them by all Defendants.

14.      As to the Twelfth Cause of Action, award Plaintiffs Attorneys Fees and costs of this action to be paid by all Defendants;

15.     An award of Restitution to Plaintiffs of all money, property and benefits Plaintiffs were

unlawfully defrauded and deprived of by the RICO Defendant; and

16.     Grant to Plaintiffs such other and further relief as this Court may deem just and proper.


Dated: New York, New York
        February 7, 2023


                                    By *s/Scott Levenson, Esq.*
                                        Scott Levenson, Esq.
                                        LEVENSON LAW GROUP
                                        Attorney for Plaintiffs
                                        625 West 51st Street
                                        New York, New York 10019
                                        Tel. (212) 957-9200
                                        Fax (201) 638-4822
                                        Email: slevensonesq@gmail.com